**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

William Arthur Kelly, Appellant.

Appellate Case No. 2024-001153

Appeal From Lexington County
Brian M. Gibbons, Circuit Court Judge

Unpublished Opinion No. 2026-UP-392
Submitted July 1, 2026 – Filed July 29, 2026

**AFFIRMED**

Appellate Defender Joanna Katherine Delany, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General William Joseph Maye, both of Columbia, for Respondent.

**PER CURIAM:**  William A. Kelly appeals his resentencing to life imprisonment without parole (LWOP) for murder pursuant to *Aiken v. Byars*.[1]  On appeal, Kelly argues the resentencing court abused its discretion in imposing LWOP when it (1) failed to take into account the hallmark factors of youth, (2) found the circumstances of the crime were unrelated to Kelly's family and home environment, (3) failed to account for the effect of familial pressures upon the circumstances of the crime, (4) failed to consider youth-related incompetencies that affected Kelly's ability to assist his attorneys, and (5) failed to take into account evidence regarding Kelly's rehabilitation.  We affirm pursuant to Rule 220(b), SCACR.

Viewing the entire record, we hold the resentencing court did not abuse its discretion in sentencing Kelly to LWOP for offenses he committed as a juvenile. *See State v. Finley*, 427 S.C. 419, 423, 831 S.E.2d 158, 160 (Ct. App. 2019) ("When considering whether a sentence violates the Eighth Amendment's prohibition on cruel and unusual punishments, the appellate court's standard of review extends only to the correction of errors of law."); *id.* ("Therefore, this court will not disturb the circuit court's findings absent a manifest abuse of discretion."); *id.* ("An abuse of discretion occurs when the circuit court's finding is based on an error of law or grounded in factual conclusions without evidentiary support."); *State v. Smart*, 439 S.C. 641, 646, 889 S.E.2d 573, 576 (2023) (indicating the appellate court reviews "the entire record" in determining whether the sentencing court "thoroughly considered" a juvenile offender's "background and history in light of the *Aiken* factors"); *Aiken*, 410 S.C. at 544-45, 765 S.E.2d at 577-78 (stating that before sentencing a juvenile defendant to LWOP, the sentencing court must "fully explore" mitigating factors related to his youth, specifically "(1) the chronological age of the offender and the hallmark features of youth . . . ; (2) the 'family and home environment' that surrounded the offender; (3) the circumstances

---

[1] 410 S.C. 534, 544-45, 765 S.E.2d 572, 577-78 (2014) (stating "that before a [LWOP] sentence is imposed upon a juvenile offender, he must receive an individualized hearing where the mitigating hallmark features of youth are fully explored").  At trial in 1998, Kelly was also convicted of kidnapping, armed robbery, and possession of a weapon during the commission of a violent crime, for which he received additional sentences.  Kelly's convictions all stemmed from his commission of a violent robbery at a KFC restaurant.  In 2006, after the United States Supreme Court prohibited executions of juvenile offenders, Kelly was resentenced to LWOP for the murder conviction.  In 2024, after moving for resentencing on the murder conviction pursuant to *Aiken*, Kelly received the LWOP sentence now on appeal.

of the homicide offense[ . . .] ; (4) the 'incompetencies associated with youth . . .'; and (5) the 'possibility of rehabilitation'" (quoting *Miller v. Alabama*, 567 U.S. 460, 477-78 (2012))).

Initially, insofar as Kelly argues under Issues 1, 3, 4, and 5 that the resentencing court ignored mitigating evidence, we hold the court considered the evidence.  *See State v. Mack*, 441 S.C. 526, 540, 894 S.E.2d 820, 828 (Ct. App. 2023) (recognizing that mitigating factors must be "'carefully and thoughtfully considered' in the individualized sentencing proceeding" (quoting *Aiken*, 410 S.C. at 543, 765 S.E.2d at 577)).  The resentencing order and the transcript from the *Aiken* hearing show that the court identified the *Aiken* requirements and recognized its duty to consider the total evidence in light of *Aiken*.  Therefore, although the court did not address the total evidence in the resentencing order, the record indicates the court considered the evidence.  *See State v. Inman*, 395 S.C. 539, 570, 720 S.E.2d 31, 48 (2011) (Pleicones, J., concurring) ("A judge is presumed to weigh evidence properly."); *cf. Mack*, 441 S.C. at 543, 545-46, 894 S.E.2d at 829-30 (finding a resentencing order demonstrated an "inadequate" *Aiken* analysis when it made "no reference" to the hallmark features of youth other than "stating it had considered all the *Aiken* factors," and failed to address how mitigating evidence "counsel[ed] against" LWOP (quoting *Miller*, 567 U.S. at 480)).  Additionally, insofar as Kelly argues the court erred in making findings contrary to expert opinion when the court found the expert opinion was credible, we hold it was within the court's discretion to determine the weight of expert opinion.  *See Florence Cnty. Dep't of Soc. Servs. v. Ward*, 310 S.C. 69, 72-73, 425 S.E.2d 61, 63 (Ct. App. 1992) ("A trier of fact is not compelled to accept an expert's opinion, but may give it the weight he determines it deserves.").

As to the remainder of Issue 1, Kelly argues the sentencing court erred in treating his age of seventeen years and seven months as an aggravating circumstance under the first *Aiken* factor and failing to thoughtfully consider how his age-related characteristics affected the offense.  We recognize that a juvenile offender's close proximity to adulthood does not, by itself, weigh against mitigation.  *See Mack*, 441 S.C. at 541, 894 S.E.2d at 828 ("[T]he fact that an offender is seventeen rather than a younger age is relevant to the inquiry."); *but cf. id.* ("[A]ge is not a sliding scale that necessarily weighs against mitigation the closer the offender is to turning eighteen years old at the time of the crime." (alteration in original) (quoting *State v. Roby*, 897 N.W.2d 127, 145 (Iowa 2017))); *id.* at 545-46, 894 S.E.2d at 830 (finding error when the defendant's near-adulthood "was used against him without affording him full consideration of juvenility").  However, we hold the court considered Kelly's chronological age alongside his youthful characteristics because

although the order primarily highlighted Kelly's "adult" characteristics in analyzing the first factor, it also found he did not show "impetuosity" in committing the offense. *See Smart*, 439 S.C. at 646, 889 S.E.2d at 576 (indicating the appellate court reviews "the entire record" in determining whether the sentencing court performed a thorough *Aiken* analysis); *Aiken*, 410 S.C. at 544, 765 S.E.2d at 577 (requiring consideration of "the chronological age of the offender and the hallmark features of youth, including 'immaturity, impetuosity, and failure to appreciate the risks and consequence'" (quoting *Miller*, 567 U.S. at 477)); *Inman*, 395 S.C. at 570, 720 S.E.2d at 48 ("A judge is presumed to weigh evidence properly.").

As to Issue 2, Kelly argues the record did not support the resentencing court's finding that the offense was unrelated to his family and home environment when expert opinion and other evidence showed (1) Kelly grew up in an isolated environment where he experienced brutal, prolonged abuse from his father and (2) the abuse impaired Kelly's development, "cultivated" repressed anger, and motivated him to commit robbery as a means of escape. He also contends the court erroneously focused on the circumstances of the offense itself in analyzing the second *Aiken* factor. We hold evidence in the record showing a conflict between Kelly and Victim—his former manager at the KFC—supported a finding that the offense was unrelated to Kelly's family and home environment. *See Smart*, 439 S.C. at 646, 889 S.E.2d at 576 (indicating the appellate court reviews "the entire record" in determining whether the sentencing court performed a thorough *Aiken* analysis); *Aiken*, 410 S.C. at 544, 765 S.E.2d at 577 (requiring consideration of "the 'family and home environment' that surrounded the offender" (quoting *Miller*, 567 U.S. at 477)). We acknowledge that, in light of the record, the court's finding that Kelly's anger stemming from the abuse was "a large factor in the commission of the crimes" appears inconsistent with its finding that "[t]he crime committed was unrelated to [Kelly's] upbringing and home life." However, the order expressly stated that the court considered the "mitigating factor" of the abuse and Kelly's resulting anger but that "it [did] not weigh heavily in the court's sentence." Further, although the analysis of the second factor included findings related to the circumstances of the offense, it also included findings relevant to Kelly's family and home environment. Therefore, we hold the court adequately considered the second factor. *See Inman*, 395 S.C. at 570, 720 S.E.2d at 48 ("A judge is presumed to weigh evidence properly."); *cf. Mack*, 441 S.C. at 543-44, 894 S.E.2d at 829-30 (finding a sentencing order did not "show[] a meaningful consideration" of the second *Aiken* factor when it *failed* to conduct a "specific and individualized inquiry" regarding "the impact of *the defendant's* family and home environment *on his crimes*").

As to the remainder of Issue 3 and the third *Aiken* factor, Kelly argues the sentencing court erred in failing to meaningfully consider expert opinion stating Kelly's abuse—and his resulting desperation—constituted familial pressures that culminated in the offense. We hold evidence from the record supports the court's finding that Kelly alone committed a premeditated, "extremely aggravated crime of violence" that was "sole[ly] focus[ed]" on Victim. Further, although the court did not reference the impact of the abuse under the third factor, it addressed the impact of the abuse under the second factor. *See Smart*, 439 S.C. at 646, 889 S.E.2d at 576 (indicating the appellate court reviews "the entire record" in determining whether the sentencing court performed a thorough *Aiken* analysis); *Aiken*, 410 S.C. at 544, 765 S.E.2d at 577 (requiring consideration of "the circumstances of the homicide offense, including the extent of the offender's participation in the conduct and how familial and peer pressures may have affected him"); *Inman*, 395 S.C. at 570, 720 S.E.2d at 48 ("A judge is presumed to weigh evidence properly.").

As to the remainder of Issue 4, Kelly argues the resentencing court erred in analyzing the fourth *Aiken* factor by failing to meaningfully consider expert opinion stating Kelly's youth-related incompetencies precluded him from giving his attorneys a coherent and consistent account of the offense they could present to the trial jury. We hold that although the analysis set forth in the resentencing order may be construed to reflect a curtailed inquiry regarding the impact of youth-related incompetencies upon Kelly's ability to navigate the legal system, review of the entire record indicates the court meaningfully considered the evidence relevant to the inquiry. *See Smart*, 439 S.C. at 646, 889 S.E.2d at 576 (acknowledging that language in the sentencing court's oral ruling could have been construed as erroneous, but determining "[a]fter a careful review of the entire record" that the sentencing court "thoroughly considered" a juvenile offender's "background and history in light of the *Aiken* factors"); *Aiken*, 410 S.C. at 544, 765 S.E.2d at 577 (requiring consideration of "the 'incompetencies associated with youth—for example, [the offender's] inability to deal with police officers or prosecutors (including on a plea agreement) or [the offender's] incapacity to assist his own attorneys'" (alterations in original) (quoting *Miller*, 567 U.S. at 477-78)); *Inman*, 395 S.C. at 570, 720 S.E.2d at 48 ("A judge is presumed to weigh evidence properly."); *see also Graham v. Florida*, 560 U.S. 48, 78 (2010) (acknowledging "special difficulties encountered by counsel in juvenile representation" and noting several ways in which "the features that distinguish juveniles from adults also put them at a significant disadvantage in criminal proceedings").

Finally, as to the remainder of Issue 5, Kelly argues the resentencing court misapplied the fifth *Aiken* factor by failing to meaningfully consider evidence

showing his capacity for rehabilitation, including that he had committed no violent acts in his twenty-five years of incarceration. We hold the court adequately considered the fifth factor because although the sentencing order did not address relevant evidence beyond records of Kelly's disciplinary infractions and minimal participation in educational and developmental programing within the South Carolina Department of Corrections, the court considered additional evidence of Kelly's capacity for rehabilitation during the *Aiken* hearing and acknowledged in its resentencing order that juvenile defendants possess "diminished culpability and heightened capacity for change." *See Smart*, 439 S.C. at 646, 889 S.E.2d at 576 (indicating the appellate court reviews "the entire record" in determining whether the sentencing court performed a thorough *Aiken* analysis); *Aiken*, 410 S.C. at 544, 765 S.E.2d at 577 (requiring consideration of the "possibility of rehabilitation" (quoting *Miller*, 567 U.S. at 478)); *id.* at 539, 765 S.E.2d at 575 (acknowledging that *Miller* cautions against juvenile LWOP sentences in part due to "children's diminished culpability and heightened capacity for change" (quoting *Miller*, 567 U.S. at 479)); *Inman*, 395 S.C. at 570, 720 S.E.2d at 48 ("A judge is presumed to weigh evidence properly.").

**AFFIRMED.**[2]

**GEATHERS, HEWITT, and CURTIS, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.